UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERNON L. BUNCH,<br><br>                Petitioner,<br><br>         v.<br><br>UNITED STATES,<br><br>                Respondent. | Civil Action No. 20-cv-02106 (BAH)<br><br>Chief Judge Beryl A. Howell |

### MEMORANDUM OPINION

Petitioner Vernon L. Bunch, proceeding *pro se*, challenges, under 28 U.S.C. § 2254, his April 2012 D.C. Superior Court convictions for multiple felony offenses, including aggravated assault, robbery, and burglary. Following a jury trial, his convictions were affirmed on direct appeal, except for three vacated counts, and on collateral review in D.C. Superior Court and the D.C. Court of Appeals ("DCCA"). He now seeks federal court review on grounds that he received ineffective assistance from both his trial and appellate counsel. *See* Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet."), ECF No. 1. Since subject matter jurisdiction is lacking to review the claims asserted, this petition must be dismissed.

**I.    BACKGROUND**

Petitioner is currently incarcerated at the United States Penitentiary Hazelton in Bruceton Mills, West Virginia, *see* Pet. at 1, where he is serving a Superior Court sentence of 382 months' incarceration (almost 32 years) for two counts of aggravated assault while armed, three counts of assault with a deadly weapon, one count of assault, one count of first-degree burglary while armed, and one count of robbery while armed, *see* United States' Opp'n to Pet'r's 28 U.S.C. §

1

2254 Mot. ("Gov't's Opp'n") at 3-4, ECF No. 7.[1]  The facts underlying these convictions are recounted as follows by the DCCA in an unpublished decision resolving petitioner's direct appeal:

> [Petitioner] and Jermaine Jordan, his codefendant in this case, broke into Silas Jennings's apartment on Jasper Street in the early morning hours of March 20, 2011. Edward Marshall Newkirk and Patricia Moore, a common-law husband and wife, lived in the apartment with Jennings. At around 3 a.m., Jennings was woken up by banging on the front door. He went to the bedroom where Newkirk and Moore were sleeping and told them someone was trying to break into the apartment. While they were there, [petitioner] and Jordan broke down the apartment's front door and proceeded to kick in the door to the bedroom.
>
> [Petitioner] was holding a black crowbar in one hand and a cloth in the other hand (with which he was trying, unsuccessfully, to cover his face). He confronted Newkirk, whom he called by his given name "Marshall," and demanded to know, "Where is it?" Newkirk said he didn't know what [petitioner] was looking for. [Petitioner] continued to ask where Newkirk was hiding "it," while punching Newkirk and hitting him with the crowbar in the head, across the back, and on the arm. Jennings and Moore tried to protect Newkirk, but [petitioner] hit each of them with the crowbar. Moore recognized [petitioner] as someone she had seen before, "on the streets."
>
> As this was happening, Jordan stood in front of the bedroom door, blocking the exit. Moore testified that, because she could not use the door to escape, she jumped out the window. She dropped approximately 15 to 20 feet and suffered significant injuries from the fall, including three fractures in her back and a fractured heel. She was hospitalized for several days. After Moore jumped, Jennings and Newkirk continued to struggle with [petitioner] until he and Jordan left the bedroom and began rummaging around the apartment. Newkirk took this chance to escape via the bedroom window as Moore had done. [Petitioner] returned to the bedroom and started swinging his crowbar at Jennings, asking if he knew "where it's at." Eventually [petitioner] and Jordan left the apartment.
>
> Later that morning, Jennings found [petitioner's] driver's license on the floor under a blanket in the bedroom where the assault took place. Jennings gave the license to Newkirk's son, Darnell Richardson who said he would turn it over to the police. That same day, Moore was visited in the hospital by her sister-in-law Minnie Allen. Allen showed Moore a text message from Richardson containing a photo of the driver's license. As Allen showed the photo to Moore, she said, "Look what the dumbass left behind." Moore later testified that she recognized [petitioner]

---

[1]  Petitioner did not paginate his habeas petition, and the government has compiled multiple documents into single exhibits. For ease of review, the pagination assigned by the Court's Case Management/Electronic Case Files system (CM/ECF) will be used in reference to both filings.

2

immediately.  Two days later, on March 22, 2011, the police showed Moore a nine-photo array containing a different picture of [petitioner].  Moore identified [petitioner] as the burglar with the crowbar from that picture.  Moore's photo-array identification of [petitioner] was in evidence at trial; she also made an in-court identification of him.

There was evidence at trial that Newkirk, Jennings, and Moore were all active narcotics users.  The afternoon and evening before the break-in, Moore had been drinking beer, smoking crack, and snorting heroin.  Witnesses also testified that they had seen Moore and Newkirk sell drugs out of the Jasper Street apartment on a regular basis.

Gov't's Opp'n, Ex. I (*Bunch v. United States*, Mem. Op. & Judg., 12-CF-852, at *1-3 (D.C. June 12, 2015)), at 1-3.[2]

Before pursuing habeas relief in federal court, petitioner repeatedly exercised his right to challenge his conviction in the local District of Columbia courts.  He first sought review from the DCCA, which vacated his conviction on three counts (two counts of obstruction of justice and a single count of first-degree burglary) due to an intervening change in D.C. law after petitioner's 2012 sentencing.[3]  *Id.*  Petitioner's remaining convictions were affirmed.  *Id.*  The mandate for this direct appeal issued on July 9, 2015.  *See* Gov't's Opp'n, Ex. III (DCCA Docket Report) at 3.

Petitioner then filed, on August 25, 2015, a motion to recall the mandate to seek *en banc* review by the appellate court, *see* Gov't's Opp'n, Ex. IV (Unopposed Mot. to Recall Mandate for

---

[2]     Petitioner's defense at trial was based on misidentification, which was supported by a partial alibi from petitioner's sister, Lakisha Wright, who testified that she saw petitioner at her mother's home in Maryland at around 8:00 PM on the night of the incident and at 11:00 AM the following morning.  *See* Pet. at 64.

[3]     Petitioner raised before the DCCA the following "nine claims of error," none of which asserted ineffective assistance of trial counsel: (1) misidentification; (2) improper preclusion of a *Winfield* defense; (3) denial of continuance to secure a defense witness; (4) improper closing argument by the prosecution; (5) insufficient evidence to convict of aggravated assault while armed; (6) improper use of a demonstrative exhibit; (7) a *Brady* violation; (8) deficient jury instructions to convict of burglary count; and (9) that his conviction for obstruction of justice (Count 13) and first-degree burglary with intent to obstruct justice (Count 14) "merge because the conduct charged in Count 13 provided the factual predicate for the government's proof of Count 14."  *See* Gov't's Opp'n, Ex. I at 3-14.  The DCCA rejected each of these arguments, except the ninth claimed error, as to which the government agreed that petitioner's conviction for first-degree burglary (Count 14) and obstruction of justice (Counts 13 and 15) should be vacated.  *Id.*  On remand, the Superior Court accordingly vacated Counts 13, 14, and 15, and resentenced petitioner to his current term of 382 months' incarceration on the remaining counts of conviction.  *See* Gov't's Opp'n at 4 n.4.

3

Purposes of Filing Potential Pet. for Reh'g) at 1, which was granted, *see id.* at 7. His subsequent "Petition for Rehearing *En Banc*," *see id.* at 9-19, was denied on November 25, 2015, *see id.* at 21. Neither his motion to recall the mandate nor petition for *en banc* review asserted a claim for ineffective assistance of appellate counsel. *See generally id.* at 1-5, 9-19.

During the pendency of his direct appeal, petitioner also sought post-conviction relief in D.C. Superior Court. Specifically, on January 14, 2015, he filed a *pro se* motion, under D.C. Code § 23-110, alleging ineffective assistance of trial counsel because "his trial attorney was deficient in failing to object when the prosecutor, on cross-examination of a defense witness, referred to the fact that one of petitioner's prior attorneys suggested . . . petitioner should plead guilty." Gov't's Opp'n at 4; *see generally* Pet. at 40-44. Almost four years later, on September 24, 2018, the Superior Court denied petitioner's § 23-110 motion in an 11-page decision. Pet. at 62. Although finding that trial counsel was deficient for failing to timely object to the disputed comments made by the prosecution, *see* Pet. at 68, the court nonetheless concluded that petitioner suffered no prejudice because "[t]he strength of the [g]overnment's case makes it highly improbable that the outcome at trial would have been different absent counsel's deficient performance," Pet. at 71. The DCCA summarily affirmed, on July 23, 2019, the Superior Court's denial of petitioner's § 23-110 motion. Pet. at 82-83.

Claiming ineffective assistance from both his trial and appellate counsel, petitioner filed the pending habeas petition on July 29, 2020, requesting that this Court direct the "D.C. Court of Appeals to address [his ineffective assistance of counsel] claims on [the] merits and/or grant [him] a fair trial in accordance with the 6th and 14th amendments." Pet. at 15. According to petitioner, he attempted to file a second motion to recall the mandate in August 2019, but "[t]his motion was not processed by the [D.C.] Court of Appeals because . . . a mandate was issued and

4

filed in 2015." Pet. at 32.  Petitioner suggests that he would have put forward an ineffective assistance of appellate counsel claim in this second motion to recall the mandate.  *Id.* at 33.  The DCCA has no record of the filing of any such motion in or after August 2019.[4]  *See* Gov't's Opp'n, Ex. III (DCCA Docket Report) at 3.

## II.   LEGAL STANDARD

"A conviction in the Superior Court of the District of Columbia is considered a state conviction under federal habeas law, and a challenge to a Superior Court conviction is properly brought under 28 U.S.C. § 2254."  *Reed v. Thomas*, 287 F. Supp. 3d 6, 9 (D.D.C. 2018) (citations omitted).  Unlike prisoners convicted in state courts or a United States district court, however, "a District of Columbia prisoner has no recourse to a federal judicial forum unless the local remedy is inadequate or ineffective to test the legality of his detention" under D.C. Code § 23-110.  *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986) (citations omitted); *see Byrd v. Henderson*, 119 F.3d 34, 37 (D.C. Cir. 1997) ("[T]o collaterally attack his sentence in an Article III court[,] a District of Columbia prisoner faces a hurdle that a federal prisoner does not.").  In enacting D.C. Code § 23-110, Congress "sought to vest the Superior Court with exclusive jurisdiction over most collateral challenges by prisoners sentenced in that court."  *Williams v. Martinez*, 586 F.3d 995, 1000 (D.C. Cir. 2009).  Challenges to a Superior Court judgment of conviction must therefore initially be pursued in that court.  *See Blair-Bey v. Quick*, 151 F.3d 1036, 1042-43 (D.C. Cir. 1998).

Section 23-110 allows a District of Columbia prisoner to move in Superior Court to challenge his sentence on grounds, *inter alia*, that "(1) the sentence was imposed in violation of

---

[4] The government recounts that a DCCA employee "relayed . . . that the [court] did not have record of petitioner's attempt to file a motion to recall the mandate, other than the . . . motion to recall the mandate to petition for rehearing on direct appeal," which petitioner filed in 2015.  Gov't's Opp'n at 12.

5

the Constitution . . . [and] (2) the court was without jurisdiction to impose the sentence[.]" D.C. Code § 23-110(a). The local statute further provides that a prisoner may not petition for a writ of habeas corpus in federal court if "the Superior Court has denied him relief, unless it . . . appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." *Id.* § 23-110(g). "Section 23-110(g)'s plain language makes clear that it only divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims pursuant to section 23-110(a)." *Williams*, 586 F.3d at 998. Collateral review in federal court is thus limited to claims that a petitioner may *not* raise through a § 23-110 motion. *See id.* at 999. Moreover, the ordinary habeas exhaustion requirement also applies to collateral review in federal court of any decision by the D.C. Superior Court and DCCA. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").

Finally, in addition to the aforementioned jurisdictional and exhaustion requirements, a post-conviction challenge to a state sentence must surmount another hurdle to succeed in federal court. For any matter "adjudicated on the merits" in a state court, a habeas petitioner is required to establish that the local court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented." *Waters v. Lockett*, 896 F.3d 559, 566 (D.C. Cir. 2018) (citing 28 U.S.C. § 2254(d)). In the context of ineffective assistance claims, this requires a petitioner to "prove that the state court's application of the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard was

6

*unreasonable*, not simply that he should prevail under *Strickland*."[5]  *Id.* at 567 (emphasis in original).  For this reason, the Supreme Court has described as "doubly deferential" the review by a federal court, under § 2254, of an ineffective assistance of counsel claim adjudicated in state court.  *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

### III.   DISCUSSION

This Court has only limited jurisdiction to review habeas corpus petitions from persons convicted in the local District of Columbia courts.  *See supra* Part II.  Petitioner's claims of ineffective counsel during both the trial and appellate proceedings in his case must be dismissed for lack of jurisdiction, but for different reasons.

#### A.   Ineffective Assistance of Trial Counsel Claim

Petitioner's ineffective assistance of trial counsel claim may not be considered because petitioner has failed to demonstrate that the remedy available to him under D.C. Code § 23-110 for judicial review of that claim is inadequate or ineffective.  *See Garris*, 794 F.2d at 726.  Petitioner makes the conclusory statement that the Superior Court's § 23-110 ruling was "incomplete, inadequate and ineffective," but fails to specify how the remedy available under the D.C. Code was insufficient to address his claims of ineffective trial counsel.  Pet'r's Reply at 17.  To the contrary, petitioner seized his opportunity to request post-conviction relief and properly presented in Superior Court a § 23-110 motion alleging he was denied effective assistance of trial counsel.  *See* Pet. at 36-46.  Petitioner's "mere lack of success" on this § 23-110 challenge before both the Superior Court and the DCCA "does not pave the way for collateral attack" in federal district court.  *Garris*, 794 F.2d at 727 (footnote and citations omitted); *see also Johnson*

---

[5]  Under *Strickland*, a petitioner may prevail on an ineffective assistance claim by showing that counsel's representation fell below an objective standard of reasonableness and demonstrating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  A "strong presumption" applies in reviewing such claims that counsel's performance fell within the "wide range of reasonable professional assistance."  *Id.* at 689.

7

*v. Matevousian*, Civ. Action No. 16-0757 (RC), 2016 WL 2930891, at *2 (D.D.C. May 19, 2016) ("[T]he mere fact that the D.C. courts denied [petitioner's] § 23–110 motion does not render the remedy inadequate or ineffective, particularly since he was provided a full and fair opportunity to litigate a colorable claim in the District of Columbia courts.") (citations omitted); *Mackall v. Wilson*, 32 F. Supp. 3d 76, 79 (D.D.C. 2014) (holding that claims predicated on the ineffective assistance of trial counsel fall within the scope of § 23-110 and are barred from collateral review in federal court if already considered in Superior Court and the DCCA); *Wilson v. Off. of the Chairperson*, 892 F. Supp. 277, 280 (D.D.C. 1995) ("A petitioner may not complain that the remedies provided him by D.C. Code § 23-110 are inadequate merely because he was unsuccessful when he invoked them."). This Court is therefore statutorily barred, under D.C. Code § 23-110, from exercising jurisdiction to address the merits of petitioner's claim of ineffective assistance by his trial counsel.

### B.  Ineffective Assistance of Appellate Counsel Claim

By contrast to claims of ineffective *trial* counsel, claims of ineffective *appellate* counsel are not subject to the collateral review bar under D.C. Code § 23-110. *See Williams*, 586 F.3d at 998-99 (noting that the Superior Court lacks "authority to review appellate proceedings" and cannot "entertain a section 23-110 motion challenging the effectiveness of appellate counsel"). Nevertheless, to obtain collateral review of a claim of ineffective appellate counsel, a habeas petitioner must have exhausted that claim before the DCCA since only "after a cogent ruling from the D.C. Court of Appeals concerning local relief, if any . . . the District Court will be in a position to rule intelligently on his federal petition for habeas corpus" asserting a denial of adequate appellate counsel. *Id.* at 999 (internal citations omitted); *see also Streater v. Jackson*, 691 F.2d 1026, 1028 (D.C. Cir. 1982) ("[I]t is apparent that the D.C. Court of Appeals is the tribunal best situated to address [petitioner's] claim that he was denied effective assistance of

counsel in that forum."). Thus, this Court may review a "federal habeas petition asserting ineffective assistance of appellate counsel after the prisoner moved to recall the mandate in the D.C. Court of Appeals" on that basis. *Williams*, 586 F.3d at 999; *see also Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc) (requiring that ineffective assistance of appellate counsel claims be litigated through a motion to recall the mandate).

Petitioner's claim of ineffective appellate counsel may not be substantively reviewed due to his failure to exhaust his available remedies before the DCCA. Following a conviction in D.C. Superior Court, a motion in the DCCA "to recall the mandate is the appropriate avenue" to exhaust a claim based on ineffective assistance of appellate counsel. *Watson*, 536 A.2d at 1060. Only those "D.C. prisoners who challenge the effectiveness of appellate counsel through a motion to recall the mandate in the D.C. Court of Appeals will get a second bite at the apple in federal court." *Williams*, 586 F.3d at 1000; *see also Richardson v. United States*, 999 F. Supp. 2d 44, 49 (D.D.C. 2013) ("Only a petitioner who has moved to recall the mandate may proceed with an ineffective assistance of appellate counsel claim in [federal court].").

Here, petitioner did not allege ineffective assistance of appellate counsel in his 2015 motion and associated briefing seeking to recall the DCCA's mandate. Beyond his blanket assertion that he filed a second motion to recall the mandate in 2019 but the DCCA "refused to process" it, Pet. at 8, 9, petitioner's suggestion that he attempted to aver ineffective assistance of appellate counsel before the DCCA at that time is also simply not supported in the record. This Court, as such, is in no "position to rule intelligently" on petitioner's claim of ineffective assistance of appellate counsel given the absence of "a cogent ruling from the D.C. Court of Appeals concerning local relief" on that issue. *Williams*, 586 F.3d at 999 (internal citations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may

grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court . . . [and] give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). Accordingly, petitioner failed to satisfy the exhaustion directive of § 2254 and his claim for ineffective assistance of appellate counsel is not properly before this Court. *See Roberson v. United States*, No. 18-cv-1469 (DLF), 2018 WL 5777394, at *2 (D.D.C. Nov. 2, 2018) ("Because [petitioner] does not suggest that he has satisfied the mandate-recall procedure, the Court will dismiss the ineffective assistance of appellate counsel claim for failure to exhaust.").[6]

## IV.  CONCLUSION

For the foregoing reasons, this Court lacks jurisdiction to review the merits of petitioner's habeas petition raising ineffective assistance of trial and appellate counsel claims. This case must therefore be dismissed.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  August 27, 2021

							_____
							BERYL A. HOWELL
							Chief Judge

---

[6] Besides arguing that petitioner failed to exhaust state remedies for his claim of ineffective appellate counsel, the government also maintains that this claim is "procedurally barred and that [petitioner] has not overcome his procedural default." Gov't's Opp'n at 19 n.12; *see id.* at 11-17. "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). Petitioner does not engage on this argument and consequently does not attempt to establish "cause" and "prejudice" to excuse any such default. In any event, since the ineffective appellate counsel claim may be resolved on the basis that petitioner failed to satisfy the § 2254 exhaustion requirement, the government's procedural default argument need not be addressed.